KELLY, J.
This case requires us to consider whether MCL 750.145c(3), which prohibits the distribution or promotion of child sexually abusive material, requires that the distribution or promotion be performed with criminal intent. If criminal intent is an element of the offense, we must determine also whether the prosecutor presented sufficient evidence to prove that defendant possessed it.
We agree with the Court of Appeals that MCL 750.145c(3) requires that an accused be shown to have had criminal intent to distribute or promote. We also agree that the evidence presented to the trial court was insufficient to prove that intent. Therefore, we affirm the decision of the Court of Appeals that reversed defendant’s conviction for distributing and promoting child sexually abusive material.
I. FACTS AND PROCEDURAL HISTORY
Defendant was a field technician for Comcast OnLine, an organization that sells cable Internet access to business and residential customers. Field technicians install Internet cable service and perform troubleshooting when a customer encounters difficulty in accessing the Internet.
*449 Comcast furnished defendant with a company van and a laptop computer for employment-related use. Before the laptop was issued to defendant, the hard drive was reformatted so that it contained only company-sanctioned software programs.
On August 9, 2000, a Wednesday, defendant quit his employment with Comcast. He told Christopher Williams, another Comcast employee, that he would return the company’s equipment and van on the weekend. Williams initially told defendant that this would be acceptable, but called defendant a second time and advised him that the equipment had to be returned that day.
Williams retrieved the items from defendant approximately an hour after the telephone conversation. He returned the laptop to Comcast’s office and began to reformat it. Although it was not required in the formatting, he ran a search for JPG files, files containing pictures, “tj]ust to see what was on it.” He found several and opened one. It contained adult pornography. Williams looked further and came across a picture of a partially naked young girl.
Because of his discovery, Williams gave the computer to Carl Radcliff, a data support technician for Comcast. Radcliff also ran a search for JPG files. He eventually found “a series of child pornography.” Radcliff indicated that the pornographic material was not in a readily available location, but was “buried inside of what’s known as a user profile.”
The laptop was later turned over to the police. Detective Edward Stack of the St. Clair Shores Police Department testified that he and another detective found images of child pornography on it. Sergeant Joseph Duke, the supervisor of the Computer Crimes Unit of the Oakland County Sheriffs Department, *450 counted over five hundred images on the computer that he believed qualified “as either child sexually abusive material or child erotica.”
Sergeant Duke believed that the photographs had been downloaded from the Internet. He indicated that the files had been difficult for him to find because they were buried in subfolders seven directory levels down. He testified that “[a]s an investigator and as an examiner, it’s kind of a red flag when I have to go down through 7 directory levels to get to evidence.” When asked why this raises a red flag, Sergeant Duke said it indicates that the data are being hidden.
Because of the discovery of child pornography, and because there were two minor children living in defendant’s home, David Joseph, a children’s protective services worker with the Family Independence Agency,[1] interviewed defendant. Joseph testified that defendant told him that, when a Comcast employee leaves employment, new programs are installed in that employee’s computer. Defendant indicated that he did not think anybody would go through the files he had created there. He presumed that the hard drive would simply be wiped clean before installation of new software.
Defendant admitted to Joseph that he had obtained the photographs “from the Internet and from sharing with others.” Joseph also said that it was his impression from talking with defendant that defendant had taken part in an Internet club that exchanged child pornography.
A jury convicted defendant of (1) distributing or promoting child sexually abusive material, MCL 750.145c(3); (2) possessing the material, MCL *451 750.145c(4); and (3) using the Internet or a computer to communicate with people for the purpose of possessing the material, MCL 750.145d.[2] In a published opinion, the Court of Appeals reversed defendant’s conviction for distributing or promoting child sexually abusive material under MCL 750.145c(3) and affirmed his other convictions. 260 Mich App 201; 679 NW2d 77 (2003). The prosecutor appeals the reversal to this Court. 470 Mich 889 (2004).
II. STANDARD OF REVIEW AND STATUTORY CONSTRUCTION
Issues of statutory interpretation, like questions of law, are reviewed de novo. People v Koonce, 466 Mich 515, 518; 648 NW2d 153 (2002). In interpreting a statute, our goal is to ascertain and give effect to the Legislature’s intent. People v Morey, 461 Mich 325, 330; 603 NW2d 250 (1999). Where the language of the statute is unambiguous, the Court presumes that the Legislature intended the meaning expressed. Id.
Accordingly, to determine whether a statute imposes strict liability or requires proof of a guilty mind, the Court first searches for an explicit expression of intent in the statute itself. See People v Quinn, 440 Mich 178, 185; 487 NW2d 194 (1992).
Normally, criminal intent is an element of a crime. People v Rice, 161 Mich 657, 664; 126 NW 981 (1910). Statutes that create strict liability for all their elements are not favored. Quinn, 440 Mich at 187. Hence, we tend to find that the Legislature wanted criminal intent to be an element of a criminal offense, even if it was left unstated.
*452 III. CRIMINAL INTENT IS AN ELEMENT OF MCL 750.145c(3)
The statutory provision under consideration, MCL 750.145c(3), reads in relevant part:
A person who distributes or promotes, or finances the distribution or promotion of, or receives for the purpose of distributing or promoting, or conspires, attempts, or prepares to distribute, receive, finance, or promote any child sexually abusive material or child sexually abusive activity is guilty of a felony, punishable by imprisonment for not more than 7 years, or a fine of not more than $50,000.00, or both, if that person knows, has reason to know, or should reasonably be expected to know that the child is a child or that the child sexually abusive material includes a child or that the depiction constituting the child sexually abusive material appears to include a child, or that person has not taken reasonable precautions to determine the age of the child. This subsection does not apply to the persons described in section 7 of 1984 PA 343, MCL 752.367.
The question presented is whether, to be convicted under the statute, a defendant must possess the criminal intent to distribute or promote child pornography.
Considering solely the statute’s words, it is apparent that criminal intent, mens rea, is not explicitly required. The only specific knowledge requirement is that the defendant knew that the sexually abusive material included or appeared to include a child.
IV UNITED STATES SUPREME COURT PRECEDENT
The United States Supreme Court has addressed the issue whether a criminal intent element should be read into a statute where it does not appear. Morissette v United States, 342 US 246; 72 S Ct 240; 96 L Ed 288 (1952). In Morissette, the defendant took spent shell casings from a government bombing range and sold them for salvage. The defendant was convicted of con *453 verting government property despite evidence suggesting that he had no criminal intent to steal anything and thought the property abandoned. The trial court instructed the jury that a lack of criminal intent was not a defense to the charge. Id. at 247-249.
In reviewing the case, the Morissette Court began with the proposition that criminal offenses that do not require a criminal intent are disfavored. Liability without criminal intent will not be found in the absence of an express or implied indication of congressional intent to dispense with the criminal intent element. Id. at 250-263. Morissette stated:
The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion. It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil. A relation between some mental element and punishment for a harmful act is almost as instinctive as the child’s familiar exculpatory “But I didn’t mean to,” and has afforded the rational basis for a tardy and unfinished substitution of deterrence and reformation in place of retaliation and vengeance as the motivation for public prosecution. Unqualified acceptance of this doctrine by English common law in the Eighteenth Century was indicated by Blackstone’s sweeping statement that to constitute any crime there must first be a “vicious will.” Common-law commentators of the Nineteenth Century early pronounced the same principle ....
Crime, as a compound concept, generally constituted only from concurrence of an evil-meaning mind with an evil-doing hand, was congenial to an intense individualism and took deep and early root in American soil. As the states codified the common law of crimes, even if their enactments were silent on the subject, their courts assumed that the omission did not signify disapproval of the principle but merely recognized that intent was so inherent in the idea of the offense that it required no statutory affirmation. *454 Courts, with little hesitation or division, found an implication of the requirement as to offenses that were taken over from the common law. The unanimity with which they have adhered to the central thought that wrongdoing must be conscious to be criminal is emphasized by the variety, disparity and confusion of their definitions of the requisite but elusive mental element. However, courts of various jurisdictions, and for the purposes of different offenses, have devised working formulae, if not scientific ones, for the instruction of juries around such terms as “felonious intent,” “criminal intent,” “malice aforethought,” “guilty knowledge,” “fraudulent intent,” “wilfulness,” “scienter,” to denote guilty knowledge, or “mens rea,” to signify an evil purpose or mental culpability. By use or combination of these various tokens, they have sought to protect those who were not blameworthy in mind from conviction of infamous common-law crimes. [Id. at 250-252.]
The Court then considered the history and purpose of the federal statute at issue and determined that there was no indication that Congress wanted criminal intent eliminated from the offense. Id. at 265-269.
The Morissette Court noted the longstanding presumption that all crimes require criminal intent. It held that Congress’s failure to include a criminal intent element did not signal a desire to preclude the need to prove criminal intent. Rather, the omission of any mention of criminal intent was not to Be construed as eliminating the element from the crime. Id. at 272-273.
Since the Morissette decision, the United States Supreme Court has reiterated that offenses not requiring criminal intent are disfavored. The Court will infer the presence of the element unless a statute contains an express or implied indication that the legislative body wanted to dispense with it. Moreover, the Court has expressly held that the presumption in favor of a *455 criminal intent or mens rea requirement applies to each element of a statutory crime.
In Staples v United States,[3] the Court interpreted a federal statute that makes it a crime to possess an unregistered weapon capable of automatic firing. The Court noted that silence with respect to criminal intent does not, by itself, “necessarily suggest that Congress intended to dispense with a conventional mens rea element, which would require that the defendant know the facts that make his conduct illegal.” Staples, 511 US at 605.
The Court observed that the existence of mens rea “ ‘is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence.’ ” Id., quoting United States v United States Gypsum Co, 438 US 422, 436; 98 S Ct 2864; 57 L Ed 2d 854 (1978). It held that silence did not suggest that Congress intended to eliminate a mens rea requirement from the National Firearms Act. Staples said:
On the contrary, we must construe the statute in light of the background rules of the common law, in which the requirement of some mens rea for a crime is firmly embedded. ...
There can be no doubt that this established concept has influenced our interpretation of criminal statutes. Indeed, we have noted that the common-law rule requiring mens rea has been “followed in regard to statutory crimes even where the statutory definition did not in terms include it.” Relying on the strength of the traditional rule, we have stated that offenses that require no mens rea generally are disfavored, and have suggested that some indication of congressional intent, express or implied, is required to dispense with mens rea as an element of a crime. [Staples, 511 US at 605-606 (citations omitted).]
*456 In United States v X-Citement Video, Inc [4] the United States Supreme Court applied the mens rea rule to a federal statute prohibiting child pornography. The statute made it illegal to “knowingly transport[] or ship[]” or “knowingly receiveG or distributeG” any visual depiction involving the use of a minor engaging in sexually explicit conduct. 18 USC 2252. The Court was required to determine whether the term “knowingly” as used in the section also modified the phrase “use of a minor.” The Court undertook to determine whether the defendant must knowingly transport the material and must know that it depicted a minor engaged in sexually explicit conduct.
The X-Citement Video Court presumed that mens rea must be shown to obtain a conviction, there being no clear congressional intent that strict liability should be imposed. It held that Congress must have intended that an accused transported the material knowingly and had knowledge of its nature to be guilty of the crime. X-Citement Video, 513 US at 78. The Court noted that this reading was necessary because “some form of scienter is to be implied in a criminal statute even if not expressed” and because “a statute is to be construed where fairly possible so as to avoid substantial constitutional questions.” Id. at 69.
V APPLICATION OF PRECEDENT TO RESOLVE THE CRIMINAL INTENT QUESTION
We apply this Supreme Court precedent to the case before us. No mens rea with respect to distribution or promotion is explicitly required in MCL 750.145c(3). Absent some clear indication that the Legislature intended to dispense with the requirement, we presume *457 that silence suggests the Legislature’s intent not to eliminate mens rea in MCL 750.145c(3).
The Court of Appeals correctly reached this conclusion. The most applicable dictionary definition of “distribute” implies putting items in the hands of others as a knowing and intentional act.[5] Likewise, the terms “promote” and “finance,” and the phrase “receives for the purpose of distributing or promoting” contemplate knowing, intentional conduct on the part of the accused.
The use of these active verbs supports the presumption that the Legislature intended that the prosecution prove that an accused performed the prohibited act with criminal intent. If we held otherwise, not only would it be illogical, we would create a questionable scheme of punishment: One who, with criminal intent, possessed child sexually abusive material would be subject to a lesser punishment than someone who, without criminal intent, passed along such material to others.[6]
The Court of Appeals holding that the prosecution must prove criminal intent to distribute or promote fully implements the goal of the legislative scheme. It *458 also avoids substantial constitutional questions. The fact, standing alone, that the Legislature did not affix the term “knowingly” to the distribution or promotion element does not mean that the Legislature intended a strict liability standard.
As the United States Supreme Court explained in X-Citement Video[7] if there were no mens rea element respecting the distribution of the material, the statute could punish otherwise innocent conduct. For instance, a person might accidentally attach the wrong file to an e-mail sent to another. The person might intend to send an innocent photograph, but accidentally send a pornographic photograph of a child instead. Also, the person might not intend that the recipient recognize or even see the material that he transferred.
If the statute contained no mens rea element, a person lacking any criminal intent could be convicted and sentenced to seven years in prison and a fine of $50,000. Or, as in the present case, he could be found criminally liable for returning a laptop owned by his employer, intending only that the offending material be destroyed.[8]
If this were the law, Comcast employees who transferred defendant’s JPG computer files among them *459 selves and ultimately to the police, knowing what was in them, would have violated MCL 750.145c(3). It would be immaterial that they had no criminal intent. Such a reading of the statute would frustrate its purpose.[9]
For all of the reasons given, we conclude that the Legislature intended that criminal intent to distribute be an element of MCL 750.145c(3).
VI. THE EVIDENCE IS INSUFFICIENT TO SUPPORT A CONVICTION FOR DISTRIBUTING CHILD SEXUALLY ABUSIVE MATERIAL
The next question is whether the prosecution proved that defendant had the criminal intent to distribute or promote child sexually abusive material. Due process requires proof of intent beyond a reasonable doubt. People v Petrella, 424 Mich 221, 268; 380 NW2d 11 (1985). When determining if sufficient evidence was presented to sustain a conviction, a court must view the evidence in a light most favorable to the prosecution. It must determine whether any rational trier of fact could have found that the essential elements of the crime were proven as required. People v Wolfe, 440 Mich 508, 515; 489 NW2d 748 (1992).
A. RETURN OF THE LAPTOP TO COMCAST
Although defendant intended to distribute the laptop containing child sexually abusive material to his former *460 employer, no evidence suggests that he distributed the material with a criminal intent. There was no evidence that defendant made anyone at Comcast aware, or attempted to make anyone aware, of the presence of the material. To the contrary, there is evidence that defendant neither intended nor expected anyone at Comcast to discover or view the material.
Comcast witnesses acknowledged that the computer hard drive could be erased and reformatted without any of its files being reviewed. Mr. Williams admitted that this was the practice at Comcast and that defendant himself may have previously performed such erasures on returned computers.
Williams admitted that he looked through defendant’s files because “I just wanted to see what was on there,” not because it was necessary. Williams further testified that he did not tell defendant when he arranged to pick up the computer that he intended to look at any of his files. Another witness testified that the practice at Comcast was simply to wipe the hard drives of all information and reformat them.
From the testimony, one could reasonably conclude that defendant anticipated that no one at Comcast would review his files. His statement to FIA investigators was that he thought the entire hard drive would be merely erased and reformatted. Viewed most favorably to the prosecution, the record contains nothing from which to reasonably infer that defendant intentionally left the material on the laptop for Comcast’s employees to discover.
The dissent questions the relevancy of the fact that defendant did not intend anybody to discover or view the material. As explained above, defendant could be convicted of distributing child sexually abusive material only if he distributed the material with a criminal *461 intent. Obviously, if defendant distributed the material not intending anybody to discover or view it, he did not distribute it with a criminal intent.
Defendant returned the computer, as he was required to do, to individuals who possibly knew how to find the infqrmation. This does not change the fact that defendant concealed the images. Nor does it change the fact that, on the basis of past company practice, defendant legitimately believed that those individuals would not search the computer for picture files. That someone had the ability and desire to search for the material defendant purposefully concealed does not affect the analysis of defendant’s state of mind. The actions of a third party could not create a criminal intent in the mind of defendant.
In addition to defendant’s statement to the FIA, substantiation for the inference that there was no mens rea is found in the testimony of prosecution witness Radcliffe. He said that the photos were buried deep in a user profile, not in a readily available location. Likewise, Sergeant Duke testified that, in his opinion, the location, seven directory levels down, indicated that defendant intended to keep the material secret.
Hence, insufficient evidence existed from which the jury could draw an inference beyond a reasonable doubt that, when returning the laptop, defendant distributed child sexually abusive material with criminal intent. We avoid the dissent’s error of conflating the criminal intent to distribute child sexually abusive material with the simple intent to return the laptop.
B. DEFENDANT’S INTERNET ACTIVITY
The prosecutor made the alternative argument that defendant distributed child sexually abusive material over the Internet. However, the jury acquitted him of *462 that crime. It specifically found that defendant did not use a computer or the Internet to communicate with another person to distribute or promote child sexually abusive material. MCL 750.145d. It found him guilty only of using a computer or the Internet to communicate with another person in order to possess child sexually abusive material. Id.
We apply the same reasoning regarding this argument as did the Court of Appeals:
Given the prosecutor’s theory that defendant distributed child sexually abusive material by returning to Com-cast the computer containing such material and the jury’s verdict of acquittal on the charge of using, a computer to distribute or promote such material, we conclude that defendant’s conviction solely rests upon the theory primarily advanced by the prosecution at trial: that defendant distributed child sexually abusive material by returning to Comcast a computer that contained such material. Accordingly, our review of the sufficiency of the evidence is limited to the theory that resulted in defendant’s conviction. [260 Mich App at 208.] [Emphasis added.]
In his concurrence, Chief Justice TAYLOR concludes that there was sufficient evidence for the jury to convict defendant of distributing child sexually abusive material. The basis for the conviction could have been that he shared such material with others on the Internet. The concurrence acknowledges that the jury specifically acquitted defendant of using a computer to distribute such material, but it observes that jury verdicts need not be consistent.
We reason that, although inconsistent jury verdicts may be legally permissible, it does not follow that we should find verdicts inconsistent when it is possible to find them consistent. See Lagalo v Allied Corp, 457 Mich 278, 282; 577 NW2d 462 (1998) (“ £[i]f there is an interpretation of the evidence that provides a logical *463 explanation for the findings of the jury, the verdict is not inconsistent.’ ”). (Citation omitted.)
There is no disagreement that, here, the jury specifically acquitted defendant of using a computer to distribute child sexually abusive material, and it convicted him of distributing such material. It could have found him guilty of distributing the material in one of two ways: (a) finding that he shared the material with others on the Internet, or (b) finding that he distributed it by returning the computer to Comcast. The former would be inconsistent with the jury’s verdict concerning the “use of a computer to distribute child sexually abusive material” charge; the latter would not be. Because we presume that the verdicts are consistent, we conclude that the jury convicted defendant of distributing the material by returning the computer to Comcast.[10]
VH. THERE IS INSUFFICIENT EVIDENCE TO SUPPORT A CONVICTION FOR PROMOTING CHILD SEXUALLY ABUSIVE MATERIAL
It is without dispute that defendant possessed child sexually abusive material that he had obtained over the Internet. The prosecution contends that possessing the material is the legal equivalent of promoting it for purposes of MCL 750.145c(3).
MCL 750.145c(3) reads:
A person who distributes or promotes, or finances the distribution or promotion of, or receives for the purpose of *464 distributing or promoting, or conspires, attempts, or prepares to distribute, receive, finance, or promote any child sexually abusive material or child sexually abusive activity is guilty of a felony, punishable by imprisonment for not more than 7 years, or a fine of not more than $50,000.00, or both.... [Emphasis added.]
MCL 750.145c(4) reads:
A person who knowingly possesses any child sexually abusive material is guilty of a felony punishable by imprisonment for not more than 4 years or a fine of not more than $10,000.00, or both[11] if that person knows, has reason to know, or should reasonably be expected to know the child is a child or that the child sexually abusive material includes a child or that the depiction constituting the child sexually abusive material appears to include a child, or that person has not taken reasonable precautions to determine the age of the child. [Emphasis added.]
Possession is not the same as promotion. The prosecutor blurs the two, asserting that by obtaining the material from the Internet, defendant promoted it. To accept that argument, this Court would have to ignore the express language of the Legislature that created a graduated scheme of offenses and punishments regarding child sexually abusive material.
The Legislature expressly separated the crimes of production of child sexually abusive material,[12] distribution or promotion of the material, and simple possession. It would not have made the distinction had it intended to equate mere possession with promotion.
If the Legislature had wanted end-users of the material to be guilty of promoting such material merely because they possess it, MCL 750.145c(4) would have *465 included promotion. Alternatively, the Legislature would have equated possession with both distribution and promotion in MCL 750.145c(3) instead of creating a separate provision for possession in § 145c(4). The statute on its face makes the mere possession of child sexually abusive material a different and less severe offense than either distribution or promotion of the material.
VIII. CONCLUSION
We hold that, to convict a defendant of distribution or promotion under MCL 750.145c(3), the prosecution must prove that (1) the defendant distributed or promoted child sexually abusive material, (2) the defendant knew the material to be child sexually abusive material at the time of distribution or promotion, and (3) the defendant distributed or promoted the material with criminal intent. Also, we hold that the mere obtaining and possessing of child sexually abusive material using the Internet does not constitute a violation of MCL 750.145c(3).
There was insufficient evidence in this case for a jury to conclude beyond a reasonable doubt that defendant distributed or promoted child sexually abusive material with criminal intent. Therefore, we affirm the Court of Appeals decision reversing defendant’s conviction of distribution or promotion under MCL 750.145c(3).
CAVANAGH and MAEKMAN, JJ., concurred with KELLY, J.

 Family Independence Agency is now the Department of Human Services.

 On appeal to us, defendant did not challenge his convictions under MCL 750.145c(4) or MCL 750.145d. Therefore, this Court takes no position on whether the facts are sufficient to support convictions under those provisions.

. 511 US 600; 114 S Ct 1793; 128 L Ed 2d 608 (1994).

 513 US 64; 115 S Ct 464; 130 L Ed 2d 372 (1994).

 “Distribute: to divide and give out in shares; allot. To pass out or deliver: to distribute pamphlets.” The Random House College Dictionary (2001) “[T]o give out or deliver especially to members of a group <distribute newspapers>.” Merriam-Webster OnLine Dictionary <http://www. m-w.com> (accessed April 5, 2005). “[T]o divide (something) among several or many people, or to spread or scatter (something) over an area.” Cambridge Dictionary of American English (Online version) <http://www.dictionary. cambridge.org> (accessed April 5, 2005).

 The maximum penalty for violating MCL 750.145c(3), distributing or promoting child sexually abusive material, is seven years in prison and a fine of $50,000. The maximum penalty for possessing child sexually abusive material, MCL 750.145c(4), is four years in prison and a $10,000 fine. When defendant was convicted, MCL 750.145c(4) provided for imprisonment of one year.

 513 US at 69.

 The dissent claims that evidence of intent is found in the fact that defendant returned the laptop containing the offending material. There is evidence that defendant intended to distribute the laptop to Comcast, but there is no evidence of a criminal intent on his part to distribute child sexually abusive material. In fact, all the evidence points to the contrary conclusion, that defendant did not distribute the material with a criminal intent. He returned the laptop to his former employer as required and with the expectation that his former employer would not search for and find the child sexually abusive material. This is further supported by the fact that the material was hidden in subfolders seven directory levels down.

 The dissent insists that these Comcast employees could be convicted under our reading of MCL 750.145c(3),posi at 474 n 6. It appears to miss the distinction between intent to commit an act, such as returning another’s personal property, and intent to commit a crime, a “guilty mind.” The Comcast employees intended to report a suspected crime. They did not intend to illegally distribute child sexually abusive material.
The dissent states that, in other statutes, the Legislature has taken steps to prevent the prosecution of people who lack criminal intent. But it fails to show how those statutes are relevant to the issue before us, which is whether MCL 750.145c(3) includes criminal intent as an element.

 The concurring justice mistakes defense of our analysis for a criticism of his unanimity argument. Rather than criticize the argument, we simply find that there is no reason to consider the unanimity issue. The jury specifically acquitted defendant of using a computer or the Internet to distribute child sexually abusive material. This conclusive determination precludes reliance on the rationale that the conviction for distribution was based on defendant’s Internet activity. We need go no further.

11 MCL 740.145c(4) was amended after defendant’s trial. Formerly, a violation of this provision was punishable as a misdemeanor.

 MCL 750.145c(2).