CORRIGAN, J.
(dissenting). I respectfully dissent. MCL 768.32(1) allows a trier of fact to find a defendant guilty of an “inferior” degree of an offense that “consists] of different degrees . . . .” That is precisely what occurred in this case. We do not face any constitutional dilemma requiring the lead opinion’s novel approach to the statute. Moreover, because second-degree criminal sexual conduct, MCL 750.520c, (CSC II) is a necessarily included lesser offense of first-degree criminal sexual conduct, MCL 750.520b, (CSC I), the new rule does not govern this case. But if it did, any error would be harmless.
*155 Accordingly, I would reverse the judgment of the Court of Appeals and remand the case to that Court to address defendant’s remaining appellate issues.
I. INTERPRETATION OF MCL 768.32(1)
MCL 768.32(1) is clear and unambiguous. It provides:
[U]pon an indictment for an offense, consisting of different degrees, as prescribed in this chapter, the jury, or the judge in a trial without a jury, may find the accused not guilty of the offense in the degree charged in the indictment and may find the accused person guilty of a degree of that offense inferior to that charged in the indictment, or of an attempt to commit that offense.
This plain language indicates that when a defendant is charged with an offense “consisting of different degrees,” the fact-finder may acquit the defendant of the charged offense and find him “guilty of a degree of that offense inferior to that charged in the indictment . . ..” Here, criminal sexual conduct is an offense “consisting of different degrees” — the Legislature has formally divided the offense into degrees and designated them as such. The highest degree of the offense is CSC I, carrying a maximum sentence of life imprisonment. The other degrees of CSC carry less severe maximum punishments. Therefore, under the plain language of MCL 768.32(1), the fact-finder may consider and find a defendant guilty of CSC II, III (MCL 750.520d), or IV (MCL 750.520e) when the defendant is charged with CSC I if a rational view of the evidence supports the conviction.
Although the statutory language is clear, the lead opinion holds that a defendant may not be convicted of an offense of lesser degree unless the test set forth in People v Cornell, 466 Mich 335; 646 NW2d 127 (2002), is *156 satisfied. The lead opinion concludes that Cornell bars consideration of lesser offenses whose elements are not subsumed in the charged offense, even where the Legislature has formally denominated an offense as one of inferior degree.
As early as 1869, this Court made clear that the predecessor of MCL 768.32(1) was not restricted to formally degreed offenses, but this Court did not hold that formally degreed offenses were excluded from the scope of the statute. On the contrary, this Court’s historical analyses implicitly presumed that formally degreed offenses fell within the statute. In Hanna v People, 19 Mich 316, 320 (1869), Justice CHRISTIANCY, writing for the Court, stated:
I do not think this provision was intended to be restricted in its application to offenses divided by the statutes contained in this title (which contain all the provisions in reference to crimes), into classes expressly designated by the name of “degrees.” Thus confined, it would apply, so far as I have been able to discover, only to the single case of an indictment for murder in the first degree, and would not even include manslaughter as a lower degree of the offense, but only murder in the second degree; since [at the time Hanna was decided] murder [was] the only offense divided by the statute into classes expressly designated as “degrees.” [Emphasis added.]
Because both the common law and a separate statutory provision already provided for the consideration of second-degree murder, the predecessor of MCL 768.32(1) would have been entirely superfluous if it were limited to that offense. Thus, Justice CHRISTIANCY concluded that the predecessor of MCL 768.32(1) must “be construed as extending to all cases in which the statute has substantially, or in effect, recognized and provided for the punishment of offenses of different grades, or degrees of enormity, wherever the charge for *157 the higher grade includes a charge for the less.” Hanna, supra at 322 (emphasis added).[1]
Similarly, this Court in Cornell did not exclude offenses that have been formally divided into degrees from the scope of MCL 768.32(1). Rather, we agreed with the Hanna Court that
the provision was not intended to be limited only to those [offenses] expressly divided into “degrees,” but was intended to extend to all cases in which different grades of offenses or degrees of enormity had been recognized. Moreover the statute removed the common-law misdemeanor restriction. Thus, application of the statute is neither limited to those crimes expressly divided into degrees nor to lesser included felonies. [Cornell, supra at 353-354 (emphasis added).]
In considering offenses that were not formally degreed, we held in Cornell that the word “inferior” in MCL 768.32(1) refers “ ‘to the absence of an element that distinguishes the charged offense from the lesser offense.’ ” Cornell, supra at 354, quoting People v Torres (On Remand), 222 Mich App 411, 420; 564 NW2d 149 (1997). Thus, we held that a trier of fact may not *158 consider “cognate lesser offenses, which are only ‘related’ or of the same ‘class or category’ as the greater offense and may contain some elements not found in the greater offense.” Cornell, supra at 355. Further, we held “that a requested instruction on a necessarily included lesser offense is proper if the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense and a rational view of the evidence would support it.” Id. at 357.
It is perfectly clear, then, that both Hanna and Cornell simply presumed that formally degreed offenses were within the scope of the statute. Our decision in Cornell merely explicated a tool of construction for determining whether an offense is “inferior” where the Legislature has not formally denominated it as such. Where the Legislature has expressly divided an offense into degrees, as it has with criminal sexual conduct, no construction is necessary. By legislative definition, criminal sexual conduct is an offense “consisting of different degrees,” and application of the Cornell test is thus unnecessary. CSC II is a degree of the offense that the Legislature has expressly designated as “inferior” to CSC I.
The new rule — that a legislatively denominated lesser degree is not an “inferior” degree — reflects a lack of deference to the Legislature’s authority to denominate an offense as “inferior.” Unquestionably, the power to define crimes is wholly a legislative function. People v Calloway, 469 Mich 448, 451; 671 NW2d 733 (2003). The Legislature thus acted within its proper sphere of constitutional authority when it (1) enacted MCL 768.32(1) permitting the fact-finder to consider an inferior degree of the charged offense and (2) chose to categorize CSC II as a lesser or inferior degree of CSC I. *159 We have no authority to override this legislative classification (in the absence of a constitutional flaw).
Having conceded that the Legislature has divided the offense of criminal sexual conduct into degrees, the lead opinion remarkably concludes that CSC II is not an inferior degree of CSC I, even though the degrees of this offense are legislatively numbered in descending order, with second-, third-, and fourth-degree criminal sexual conduct as lesser degrees of first-degree criminal sexual conduct.
The lead opinion characterizes our caselaw as precluding “a judge or a jury from convicting a defendant of a cognate lesser offense even if the crime is divided into degrees.” Ante at 121. The caselaw does not remotely purport to preclude a conviction where the Legislature itself has formally divided the offense into degrees.[2]
The lead opinion’s claim that it is following 130 years of caselaw, and that my interpretation would require overruling those cases, is therefore wholly unfounded. The lead opinion cites no authority to suggest that the word “inferior” has some hidden, counterintuitive meaning that would render MCL 768.32(1) inapplicable to the very type of offenses described in the statute, i.e., offenses that the Legislature itself has formally divided into degrees.
The new rule also ignores our history of allowing a conviction of a formally inferior degree that is not a subset of the elements of the charged offense. Before People v Aaron, 409 Mich 672; 299 NW2d 304 (1980), *160 malice was not a necessary element of first-degree felony murder. But second-degree murder does require proof of malice, People v Mendoza, 468 Mich 527, 534; 664 NW2d 685 (2003). Thus, before Aaron, second-degree murder contained an element not required for first-degree felony murder. Yet this Court held consistently, even before Aaron, that an instruction for second-degree murder was appropriate where the defendant was charged with first-degree felony murder. See People v Carter, 395 Mich 434, 438; 236 NW2d 500 (1975); People v Treichel, 229 Mich 303, 307-308; 200 NW 950 (1924). Thus, this Court historically has allowed conviction of a formally inferior degree that is not subsumed in the charged offense.
This Court’s decision in People v McDonald, 9 Mich 149 (1861), further supports my analysis of our historical treatment of lesser included offenses. In McDonald, this Court held that assault and battery was included in a charge of felonious assault, and thus upheld an assault and battery conviction even though the defendant was charged only with felonious assault. It is possible to commit an assault without committing a battery. See People v Nickens, 470 Mich 622, 628; 685 NW2d 657 (2004). Thus, as it is possible to commit a felonious assault without first having committed an assault and battery, McDonald confirms that our case-law has not required a subset of the elements test, contrary to the lead opinion’s view.
Further, Justice CAVANAGH’s concurring opinion in Mendoza, supra, supports my historical analysis. In Mendoza, Justice CAVANAGH opined that limiting the application of MCL 768.32(1) to necessarily included lesser offenses contravened the accepted meaning of the term “inferior.” Id. at 551 (opinion by CAVANAGH, J.). He argued that the statutory term “inferior” authorized a *161 range of convictions broader than necessarily included lesser offenses. He contended that “[although, the majority attempts to claim its holding has a historical foundation, it, in fact, usurps this Court’s longstanding interpretation, which accords with the statute’s plain meaning.” Id. at 554. Thus, Justice CAVANAGH would permit the fact-finder to consider a “cognate” offense to the extent that it is “inferior” to the crime charged and supported by the evidence. Id. at 554-555.
I continue to support the holdings in Cornell and Mendoza because they set forth a means of discerning whether a nondegreed offense is “inferior” to the charged offense. But we simply have no authority to impose a judicial gloss on formally degreed offenses because MCL 768.32(1) expressly permits the fact-finder to consider them. Thus, in the context of formally degreed offenses such as CSC I and II, I agree with Justice CAVANAGH’s view that there is no historical basis to limit the meaning of the term “inferior” to necessarily included lesser offenses.
II. IS CSC II NECESSARILY INCLUDED IN CSC I?
Accepting the new rule of criminal law and procedure that a formally degreed offense must satisfy the Cornell test, the lead opinion does not explain why that rule was satisfied in this case. The lead opinion assumes that CSC II is merely a cognate lesser offense of CSC I, but a serious question exists regarding whether CSC II really is necessarily included in CSC I. We have yet to address this issue in the wake of recent authorities.
In the pre-Cornell era, this Court had concluded that CSC II is a cognate lesser offense of CSC I. In People v Lemons, 454 Mich 234, 253-254; 562 NW2d 447 (1997), this Court stated:
*162 CSC I requires the prosecutor to prove “sexual penetration.” MCL 750.520b(l); MSA 28.788(2)(1). CSC II requires the prosecutor to prove “sexual contact.” MCL 750.520c(l); MSA 28.788(3)(1). Sexual penetration can be for any purpose. MCL 750.520a(l); MSA 28.788(1X1). The statute defines sexual contact, however, as touching that “can reasonably be construed as being for the purpose of sexual arousal or gratification.” MCL 750.520a(k); MSA 28.788(l)(k). Thus, because CSC II requires proof of an intent not required by CSC I — that defendant intended to seek sexual arousal or gratification — CSC II is a cognate lesser offense of CSC I. In short, it is possible to commit CSC I without first having committed CSC II.
The Lemons Court acknowledged that CSC II is, in general, factually included in CSC I, “ ‘for sexual penetration is usually for a sexual purpose.’ ” Id. at 254 n 29 (quoting People v Garrow, 99 Mich App 834, 839-840; 298 NW2d 627 [1980]). But the Lemons Court remained convinced that “the additional intent requirement for CSC II mandates that it be considered a cognate lesser offense of CSC I.” Id.
Nonetheless, Lemons was decided before Cornell, when instructions on necessarily included lesser offenses were mandatory in the absence of a genuine evidentiary dispute and instructions on nondegreed, cognate offenses were permitted. See People v Ora Jones, 395 Mich 379; 236 NW2d 461 (1975). Now, however, in light of Cornell, the trier of fact may consider a necessarily included lesser offense only where a rational view of the evidence supports it, and cognate lesser offenses that are not formally degreed may not be considered at all. These major adjustments in our lesser included offense jurisprudence warrant at least a reexamination of the pre-Cornell analysis in Lemons.
*163 In addition, People v Tombs, 472 Mich 446; 697 NW2d 494 (2005), has obviously modified our understanding of the intent required to prove CSC I. That broader criminal intent requirement plainly includes the narrower intent required for CSC II. In Tombs, this Court explained that “we tend to find that the Legislature wanted criminal intent to be an element of a criminal offense, even if it was left unstated.” Id. at 451 (opinion by Kelly, J.) (emphasis added). Thus, absent a clear indication that the Legislature intended to dispense with the requirement of a criminal purpose, we will presume from the Legislature’s silence that proof of a criminal intent is required. Id. at 456-457.
In light of Tombs, we should reassess the Lemons Court’s assertion that “[s]exual penetration [under CSC I] can be for any purpose.” Lemons, supra at 253 (emphasis added). A penetration committed without a criminal purpose would likely fail to satisfy the mandates of Tombs.
The implications of Tombs should be considered. If proof of a criminal intent is required in a CSC I case, it is then fair to ask whether the intent element of CSC II is included in the criminal intent required for CSC I. The justices signing the lead opinion ought to carefully consider their assertion that CSC II is not an inferior degree of CSC I.[3]
In fact, the CSC I statute, MCL 750.520b, only prohibits penetrations that are “sexual,” and the defi *164 nitional statute, MCL 750.520a(p), lists types of sexual penetrations, including sexual intercourse, cunnilingus, fellatio, and anal intercourse. The definitional statute for CSC II does not “add” a different sexualpurpose component. It merely reiterates that the nature of the contact under the criminal sexual conduct statute must be sexual, just as the penetrations in CSC I cases must be sexual in nature.
I therefore question the lead opinion’s contention that the statutory definition of “sexual contact” contains a subjective motivation or specific intent requirement. MCL 750.520a(o) defines “sexual contact” to include
the intentional touching of the victim’s or actor’s intimate parts or the intentional touching of the clothing covering the immediate area of the victim’s or actor’s intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification, done for a sexual purpose, or in a sexual manner for: (i) Revenge, (ii) To inflict humiliation. (Hi) Out of anger.
This language does not prescribe a subjective motivation that must be proven to establish CSC II. Rather, it limits the types of “intentional touchings” that may be considered “sexual contact.” Specifically, an “intentional touching” constitutes “sexual contact” only if it “can reasonably be construed” as being for the purpose of sexual arousal or gratification, etc. That is, the statute uses objective language indicating that the intentional touching must be susceptible to being reasonably construed as reflecting the sexual purposes described in the statute.
The lead opinion offers a series of hypothetical situations that satisfy the elements of sexual penetration, but allegedly do not constitute “sexual contact.” But *165 those situations fail to honor the statutory definition. Every listed hypothetical situation involves a touching that, whatever the actor’s subjective motivation, could be reasonably construed as being for a sexual purpose identified in MCL 750.520a(o). Thus, these hypothetical situations do not support the lead opinion’s holding. On the contrary, they reflect that the lead opinion has replaced the phrase “can reasonably be construed as” in MCL 750.520a(o) with a subjective motivation element.
III. CONSTITUTIONAL AVOIDANCE
The lead opinion applies the canon of constitutional avoidance. It reasons that applying MCL 768.32(1) to formally inferior degrees that are not subsumed in the charged offense “would render the statute subject to constitutional challenge.” Ante at 124. The lead opinion perceives “a due process concern... because defendants are entitled to know the charges against them.” Ante at 123. The lead opinion thus adopts an interpretation “that will save the statute.” Ante at 124.
In invoking the constitutional avoidance doctrine, the lead opinion has omitted a crucial step by failing to identify any ambiguity in MCL 768.32(1) that would warrant loading the dice in favor of its preferred interpretation. “The canon of constitutional avoidance comes into play only when, after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction-, and the canon functions as a means of choosing between them.” Clark v Martinez, 543 US 371, 385; 125 S Ct 716; 160 L Ed 2d 734 (2005) (emphasis added; original emphasis omitted).
The lead opinion omits an ordinary textual analysis to explain why MCL 768.32(1) is susceptible of more than one construction. The language allowing a defendant charged with “an offense, consisting of different degrees,” *166 to be found “guilty of a degree of that offense inferior to that charged in the indictment...” is not unclear.
As discussed, the statutory language is not difficult to comprehend, and provides notice to the defendant that he should defend against all degrees. Indeed, the lead opinion has acknowledged that criminal sexual conduct is “an offense consisting of different degrees,” so it presumably does not find this language ambiguous. And where the Legislature has delineated the degrees of an offense and numbered them in descending order, it has plainly expressed that each subsequent degree is an inferior degree of those that precede it. Thus, the lead opinion’s failure to identify an ambiguity renders its dice-loading argument unconvincing.
But even if an ambiguity existed, the lead opinion does not justify its application of the doctrine of constitutional avoidance.
The doctrine seeks in part to minimize disagreement between the Branches by preserving congressional enactments that might otherwise founder on constitutional objections. It is not designed to aggravate that friction by creating (through the power of precedent) statutes foreign to those Congress intended, simply through fear of a constitutional difficulty that, upon analysis, will evaporate. Thus, those who invoke the doctrine must believe that the alternative is a serious likelihood that the statute will he held unconstitutional. Only then will the doctrine serve its basic democratic function of maintaining a set of statutes that reflect, rather than distort, the policy choices that elected representatives have made. For similar reasons, the statute must be genuinely susceptible to two constructions after, and not before, its complexities are unraveled. Only then is the statutory construction that avoids the constitutional question a “fair” one. [Almendarez-Torres v United States, 523 US 224, 238; 118 S Ct 1219; 140 L Ed 2d 350 (1998) (emphasis added).]
*167 In my view, there is no “serious likelihood that the statute will be held unconstitutional.” Id. The lead opinion does not identify any authority holding that due process concerns preclude consideration of an offense that a legislature has formally denominated as an inferior degree of the charged offense.[4]
In truth, compelling authorities do not raise a serious question regarding the constitutionality of MCL 768.32(1). Indeed, the lead opinion cannot possibly demonstrate a serious likelihood that MCL 768.32(1) will be held unconstitutional, in light of the United *168 States Supreme Court’s decision in Paterno v Lyons, 334 US 314; 68 S Ct 1044; 92 L Ed 1409 (1948).
In Paterno, the Supreme Court upheld a guilty plea to a charge of attempted grand larceny where the defendant was charged with receiving stolen property. Under New York law, attempted grand larceny was not necessarily included in the charged offense of receiving stolen property. Id. at 321 n 10. Yet the United States Supreme Court upheld the conviction, noting that “[t]here is close kinship between” the two offenses. Id. at 320. The Supreme Court further explained:
It would be exaltation of technical precision to an unwarranted degree to say that the indictment here did not inform petitioner that he was charged with substantial elements of the crime of larceny thereby enabling him, as a means of cutting his sentence in half, to agree to plead guilty to an attempted larceny. [Id. at 321.]
Additional authorities undercut the lead opinion’s constitutional avoidance argument. In Salinas v United States, 277 F2d 914 (CA 9, 1960), the defendant was charged with first-degree arson in the United States District Court for Alaska. The trial court instructed the jury that the charge of first-degree arson included a charge of second-degree arson. First-degree arson required proof that the defendant had willfully burned “ ‘any dwelling house... or any kitchen, shop, barn, stable or other outhouse that is parcel thereof, or belonging to or adjoining thereto ....’” Id. at 916, quoting § 65-5-1, ACLA Supplement. Second-degree arson proscribed burning “any building or structure of whatsoever class or character” not included in the first-degree arson provision. Id. The defendant had burned down a restaurant containing living quarters on the second floor. The jury found the defendant guilty of second-degree arson.
*169 The Ninth Circuit Court of Appeals held that the defendant’s conviction of the inferior degree of arson did not violate due process. It explained:
Often a particular crime is graded or classified into degrees “* * * in order that the punishment may be adjusted with reference to the presence or absence of circumstances of aggravation.” Davis v Utah Territory, 1893, 151 U.S. 262, 266, 14 S. Ct. 328, 329, 38 L. Ed. 153. Where a substantive crime is so divided, the elements necessary to the commission of the crime itself are the same in each instance, but the degree of culpability differs depending upon the category in which the circumstances place the offense. [Salinas, supra at 917.]
Thus, “where the indictment sets out a crime divided into degrees the defendant is put on notice of the particular offense charged against him together with any aggravating circumstances appearing by additional averments.” Id. (emphasis added).
The Salinas court further explained:
The well settled rule, recognized in Alaska by two statutes, is that when an indictment charges a crime in which a lesser offense is necessarily included, or charges a higher degree of a particular offense that is divided into degrees, the accused, although acquitted of the greater offense or of the higher degree of the same offense may, consistent with the requirements of due process, be convicted of a lesser included offense or a lower degree of the offense charged. [Id. (emphasis added).]
Notably, one of the Alaska statutes contained language nearly identical to our provision, MCL 768.32(1).[5]
*170 The defendant in Salinas argued that second-degree arson was a separate and distinct offense because it was not necessarily included in the charge of first-degree arson. The defendant contended that first-degree arson could be committed without first having committed second-degree arson, thereby failing a test articulated in Giles v United States, 144 F2d 860, 861 (CA 9, 1944), and House v State, 186 Ind 593; 117 NE 647 (1917). The Salinas court rejected that argument:
This test is of doubtful application in determining whether the elements of a lesser degree of a substantive crime, divided into several degrees, are included in a charge of a higher degree of that crime; it is more appropriate where different crimes are being considered. The elements of a single crime divided into degrees are the same in each instance, and only one crime can be committed. The aggravation of the basic offense may vary in each degree; the substantive crime, with its elements, remains the same. The Giles case did not seek to apply the above test to determine the sufficiency of an indictment that charged one crime divided into degrees, but rather whether one crime was necessarily included in another, different crime. This was also the situation in the House case where the rule originated; there the court was careful to note specifically that it was not dealing with an offense divided into degrees.
We are inclined to view the two statutes relating to first and second degree arson as commonly denouncing but one crime — that of arson. As it relates to buildings and structures, this crime is divided into two grades, the one being more aggravated than the other by reason of the particular nature of the building burned, i.e., a dwelling house. Consequently an indictment charging the more aggravated degree necessarily contains all of the elements of the lower degree. [Salinas, supra at 918.]
Similarly, in State v Foster, 91 Wash 2d 466; 589 P2d 789 (1979), the defendant was charged with first-degree assault with intent to kill, and the court instructed on *171 second-degree negligent assault. The jury found the defendant guilty of second-degree negligent assault. The defendant claimed that he was deprived of his constitutional right to notice of the accusation against him, and that he could be convicted of second-degree assault only if it were included in first-degree assault. The Washington Supreme Court rejected this argument:
The general rule regarding this right is that the crimes of which a person can be convicted, and those on which a jury is properly instructed, are limited to those which are charged in the information. ... There are two exceptions to this rule: (1) where a defendant is convicted of a lesser included offense of the one charged in the information ... ; and (2) where a defendant is convicted of an offense which is a crime of an inferior degree to the one charged, pursuant to RCW 10.61.003. [Id. at 471 (emphasis added).]
The Washington statute was worded nearly identically to MCL 768.32(1).[6] The Foster court held that “this statute gave appellant sufficient notice that he was subject to a conviction of second-degree negligent assault.” Foster, supra at 471.
The Foster Court also found Salinas persuasive:
Similarly [to the analysis in Salinas], we conclude that both the first-degree and second-degree assault statutes proscribe but one offense — that of assault. Since the offense upon which the trial court instructed the jury is a lesser degree crime of the one with which he was charged and the two crimes, namely assault, are not separate and distinct from one another, we conclude that appellant was *172 given sufficient notice to satisfy the requirements of [the state constitution] and the Sixth Amendment. [Id. at 472.]
Like in Salinas and Foster, our Legislature has formally divided the offense of criminal sexual conduct into degrees and numbered them in descending order. Thus, criminal sexual conduct is but one offense divided into several degrees, and CSC II is, by legislative definition, an inferior offense of CSC I. Defendant received adequate notice of the nature of this charge.
Finally, the lead opinion has offered no reason to believe that MCL 768.32(1) is unconstitutional as applied to defendant.[7] MCL 768.32(1) provided notice to defendant because the plain language of the statute permits the trier of fact to consider a lesser degree of CSC. Moreover, defendant certainly had notice that a *173 rational view of the evidence supported a CSC II conviction. It was, after all, defendant’s own admission that he had touched the victim’s vagina that led the court to find him guilty of CSC II. It is simply untenable to suggest that defendant had no notice of his own confession, or that use of that confession somehow violated due process.[8]
In my view, the Legislature is entirely free to correct the lead opinion’s rewrite of MCL 768.32(1). The lead opinion has not held that the statute is unconstitutional. Instead, the lead opinion has merely applied a canon of statutory interpretation known as the doctrine of constitutional avoidance.[9]
IV HARMLESS ERROR
Even accepting the lead opinion’s contention that an error occurred, it would be harmless.[10] As the alleged error here is unpreserved and nonconstitutional, it is *174 reviewed for plain error affecting substantial rights. People v Carines, 460 Mich 750, 764; 597 NW2d 130 (1999).
In considering whether defendant’s substantial rights were affected, I would note that under Cornell, the trier of fact may consider an inferior offense only if it is supported by a rational view of the evidence. This aspect of our holding in Cornell must apply to all inferior offenses, both formally degreed offenses and those that are inferior under the Cornell rule of construction. As we explained in Cornell: “To permit otherwise would be inconsistent with the truth-seeking function of a trial, as expressed in MCL 768.29.” Cornell, supra at 357-358.[11] That rationale applies equally here.
In this case, a rational view of the evidence supported the court’s decision to convict defendant of CSC II. The victim testified that defendant fondled her vagina. This testimony is consistent with defendant’s own admission, given during a police interview.[12] Thus, the court’s finding that defendant was guilty of two counts of CSC II was permissible under MCL 768.32(1).
The lead opinion incorrectly asserts that the defense *175 at trial was focused on a charge that defendant had sexually penetrated the victim. Ante at 125. Justice MARKMAN’s concurrence reflects a similar misunderstanding of the record. He states that defendant “likely failed to object to or otherwise refute the introduction of a statement he made to the police admitting sexual contact, because it was not relevant to his defense that no sexual penetration had occurred.” Ante at 139 (emphasis in original). Justice MARKMAN further characterizes defendant’s defense as claiming that “while he may have done something inappropriate, he did not commit CSC-I.” Ante at 139.
In truth, defendant claimed that no sexual touching of any kind occurred, and that he never made the statement to the police. Indeed, defense counsel stated in closing argument that “the question that obviously this Court is left to take a look at is whether beyond a reasonable doubt it’s been proven that Mr. Nyx: had in fact improper contact with this defendant [sic].” (Emphasis added.) Defense counsel then challenged the testimony of prosecution witnesses, noting that there were “contradicting stories” from the complainant and another witness: “It’s [sic] contradicting stories as to when it happened, allegedly; what allegedly happened, on what day this allegedly happened.” Defense counsel further discussed inconsistencies between the police reports and hospital records regarding the complainant’s version of the crime. In short, the defense theory was that no sexual incident occurred, not that defendant engaged in sexual contact short of penetration.
Nor did the defense attempt to rely on defendant’s confession. The defense strategy at trial was to suggest that defendant did not make a statement. During the cross-examination of police witnesses, defense counsel *176 attempted to challenge their credibility. For example, counsel elicited testimony that the officer who took the statement did not record the interview and did not note certain events that occurred during the making of the statement. In closing argument, counsel discussed a notation in a police document suggesting that no statement was made.[13] Thus, defense counsel plainly did not rely on the confession to suggest that defendant did something “inappropriate” short of penetration.
For these reasons, the defense at trial would not have changed had defendant known that the judge would convict him of CSC II instead of CSC I. Thus, even accepting the lead opinion’s view that an error occurred, I would conclude that it did not affect defendant’s substantial rights, and that reversal is therefore not required under Carines.
V RAMIFICATIONS OF THE MAJORITY’S DECISION
The broader consequence of the lead opinion’s adoption of its new rule of criminal procedure and new definition of substantive criminal law is that CSC II is no longer an inferior degree of CSC I. Indeed, it seems that any “cognate” degreed offense cannot qualify as an inferior offense.
*177 The Court’s decision affects all formally degreed offenses until such time as our appellate courts clarify the status of each degreed offense. Prosecutors will now have the burden of charging each degree of an offense that they wish to have considered, and to present often-confusing alternative arguments and proofs to the trier of fact for each degree of the offense charged. We will face a cottage industry of litigation to decipher whether each formally degreed offense is truly necessarily included or merely cognate.
As the lead opinion acknowledges, our Legislature has chosen to classify many crimes as formally degreed offenses.[14] To avoid claims of ineffective assistance of counsel, defense lawyers must now argue that any lesser degreed offense is not truly “inferior.” Indeed, counsel’s failure to object with regard to a lesser degree at a trial or plea hearing, or affirmative acquiescence in the inclusion of the lesser degree, will allow a defendant to argue on appeal that trial counsel was ineffective. We will spend years sorting out the consequences of this new rule.
The sensible rule that Cornell restored to Michigan is being upset by this decision. There are clear practical effects that will follow as a result of the lead opinion. Testifying before a jury is a nerve-wracking experience, and witnesses often offer more tentative statements at trial than those they made during the police investigation. Hence, a prosecutor can never know which statements of a CSC victim may be accepted as true by the trier of fact or the weight that will be given to them. In order to assure that an offender does not escape responsibility for his crime, a prosecutor will now be required *178 to charge CSC II as an alternative count whenever bringing a charge of CSC I, or risk the possibility of acquittal where the victim’s testimony at trial may not be as strong as anticipated. The same charging requirement would hold true for any other crime for which this Court has not definitively held that the lesser degreed offense is also a “necessarily included” offense. Thus, this decision heralds a revival of Ora Jones. Now, the decision of which cognate lesser offense will be included will move from the end of the trial when proofs have been adduced to the prosecutor’s charging decision before any evidence has been presented.
Finally, defendants will also suffer negative consequences with the new rule. Take, for example, a case where the prosecutor has charged a defendant with CSC I involving a 12-year-old girl (and decides not to charge CSC II as an alternative count). If the defendant disputes penetration but not sexual contact, he will face an all-or-nothing verdict instead of offering the jury the reasonable alternative of convicting him of that which he admitted: CSC II.
VI. CONCLUSION
I would hold that under the plain language of MCL 768.32(1), a fact-finder may convict a defendant of a legislatively denominated inferior degree of the charged offense if a rational view of the evidence supports the conviction. The Cornell rule of construction for determining whether an offense is “inferior” does not apply where the Legislature itself has formally divided an offense into degrees. In any event, it appears that CSC II is necessarily included in CSC I, notwithstanding this Court’s contrary statement in Lemons. Moreover, any error was harmless in light of the fact the defense at trial was that defendant engaged in no sexual touching *179 with the complainant. There is no ambiguity in the text of MCL 768.32(1) to warrant application of the canon of constitutional avoidance, nor is there a serious likelihood that the statute will be held unconstitutional. I would thus reverse the judgment of the Court of Appeals and remand the case to that Court to address defendant’s remaining appellate issues.

 The central flaw in the lead opinion’s historical analysis is that it does not acknowledge or address this language in Hanna. The Hanna Court stated in no uncertain terms that the statutory provision was not restricted to formally degreed offenses, not that it excluded such offenses. Id. at 320.
The lead opinion’s suggestion that MCL 768.32(1) codifies a historical common-law rule barring consideration of lesser degreed offenses is mistaken. First, no authority could be found to establish the existence of any such rule for formally degreed offenses. And even if such a common-law rule did exist, MCL 768.32(1) did not codify the rule. On the contrary, the statute abrogated any such rule by squarely providing that where an offense is divided into degrees, the fact-finder may convict the defendant of an inferior degree of the charged offense. See Hoerstman Gen Contracting, Inc v Hahn, 474 Mich 66, 74; 711 NW2d 340 (2006) (“The Legislature has the authority to abrogate the common law.”).

 The lead opinion cites People v McDonald, 9 Mich 150, 153 (1861); Hanna, supra; Torres, supra at 419-420; Cornell, supra; People v Mendoza, 468 Mich 527, 532-533; 664 NW2d 685 (2003); and People v Nickens, 470 Mich 622, 626; 685 NW2d 657 (2004), none of which addressed the application of MCL 768.32(1) to formally degreed offenses.

 Further, in a series of decisions issued before Lemons, the Court of Appeals held that CSC II was a necessarily included lesser offense of CSC I. See People v Green, 86 Mich App 142, 150; 272 NW2d 216 (1978) (“Since all of the elements of CSC II are the same as those of CSC I except for penetration, and there cannot be penetration without contact, second-degree CSC is a necessarily included lesser offense of CSC I.”); People v Secreto, 81 Mich App 1; 264 NW2d 99 (1978); People v Thompson, 76 Mich App 705; 257 NW2d 268 (1977).

 Schmuck v United States, 489 US 705, 717-718; 103 S Ct 1443; 103 L Ed 2d 734 (1989), does not so hold. In that case, the United States Supreme Court held that Federal Rule of Criminal Procedure 31(c) “speaks in terms of an offense that is ‘necessarily included in the offense charged.’ ” Schmuck, supra at 716. Unlike the federal rule, which does not address formally degreed offenses, MCL 768.32(1) permits conviction of an “inferior degree” of the charged offense. The Schmuck Court did not address formally degreed inferior offenses, nor did it hold that the federal constitution mandates the test set forth in FR Crim P 31(c).
The lead opinion highlights language from Schmuck stating that it was “ancient doctrine of both the common law and our Constitution that a defendant cannot be held to answer a charge not contained in the indictment brought against him.” Id. at 717. But the Schmuck Court was not addressing formally degreed offenses.
The United States Supreme Court has never suggested that due process forbids a conviction of a formally degreed lesser offense. Rather, the Supreme Court has recognized that states employ “a variety of approaches” in determining whether a lesser included offense instruction is warranted. See Hopkins v Reeves, 524 US 88, 96-98 & n 6; 118 S Ct 1895; 141 L Ed 2d 76 (1998). In upholding a Nebraska conviction, the Supreme Court in Hopkins noted that Nebraska had “alternated between use of the statutory elements test and the cognate evidence test.” Id. at 98. The analysis in Hopkins leaves little doubt that the availability of a lesser included offense instruction in a state criminal trial is generally a matter of state law.
Accordingly, there is no constitutional dilemma justifying an override of the plain language of MCL 768.32(1).

 The Alaska statute provided: “ ‘That upon an indictment for a crime consisting of different degrees, the jury may find the defendant not guilty of the degree charged in the indictment and guilty of any degree inferior thereto, or of an attempt to commit the crime or any such inferior degree thereof.’ ” Id. at 918 n 3, quoting § 66-13-73, ACLA.

 The Washington statute provided: “Upon an indictment or information for an offense consisting of different degrees, the jury may find the defendant not guilty of the degree charged in the indictment or information, and guilty of any degree inferior thereto, or of an attempt to commit the offense.” RCW 10.61.003 (emphasis added).

 See People v Lynch, 410 Mich 343, 352; 301 NW2d 796 (1981), citing United States v Raines, 362 US 17, 20; 80 S Ct 519; 4 L Ed 2d 524 (1960).
Rather than offering legal analysis to establish that MCL 768.32(1) is unconstitutional as applied to defendant, the lead opinion selectively quotes from the prosecutor’s supplemental brief. The lead opinion characterizes the prosecutor’s supplemental brief as conceding that “ ‘given the modern rise of complex offenses with multiple alternative elements, it is possible for due process to be raised in a given case ....’” Ante at 131. The lead opinion perhaps pointedly omits the prosecutor’s subsequent statement that “this case is plainly not such a case, and this court should await a viable ’as applied’ challenge to the statute before addressing that question.” Prosecutor’s supplemental brief, pp 10-11 (emphasis added). Moreover, the chief appellate prosecutor further explains that he “has, in over 31 years, never seen or heard of such a case actually existing, and does not believe the court will ever encounter one.” Prosecutor’s supplemented brief, p 11 (emphasis added).
Thus, when read in context, the prosecutor’s statement is hardly a “concession.” The lead opinion offers no evidence to rebut the prosecutor’s view that no case impheating due process concerns under MCL 768.32(1) is likely to arise. Thus, the lead opinion not only fails to explain how the statute is unconstitutional as applied to defendant, but it also fails to demonstrate a serious likelihood that it will ever be held unconstitutional, as the lead opinion must do before applying the canon of constitutional avoidance. ALmendarez-Torres, supra at 238.

 The lead opinion states that defendant may have adopted a different trial strategy, by objecting to police testimony regarding his confession, if he had known the court would consider CSC II. Ante at 126. The lead opinion does not reveal how it divined that defendant would have interposed such an objection, nor does the lead opinion identify a source in the record to challenge the admission of defendant’s confession. Indeed, defense counsel likely opted for a bench trial with the firm hope that the judge would convict defendant of a lesser offense, even though the defense theory was that no sexual incident occurred.

 See Clark v Martinez, 543 US 371, 381-382; 125 S Ct 1716; 160 L Ed 2d 734 (2005) (explaining that “[t]he canon is not a method of adjudicating constitutional questions by other means,” that “one of the canon’s chief justifications is that it allows courts to avoid the decision of constitutional questions,” and that “when a litigant invokes the canon of avoidance, he is not attempting to vindicate the constitutional rights of others,” but rather “to vindicate his own statutory rights”) (emphasis in original).

 Errors regarding lesser included offenses are subject to harmless error review. Cornell, supra at 361.

 MCL 768.29 provides, in relevant part:
It shall be the duty of the judge to control all proceedings during the trial, and to limit the introduction of evidence and the argument of counsel to relevant and material matters, with a view to the expeditious and effective ascertainment of the truth regarding the matters involved. [Emphasis added.]

 Specifically, defendant admitted that while he and the 15-year-old complainant were alone in the stairwell, he “touched her vagina.” He stated that the complainant “grabbed his penis, and attempted to put it inside her vagina.” Defendant stated that he then “put both his arms around [the complainant] at the time, and his hand went between [her] legs, touching her vagina.” Defendant admitted that, when someone came to a nearby door, he pushed the door back with his arm.

 For example, defense counsel argued:
The information provided by the officer states that there’s the statement. It’s not a written statement. It’s not reduced to writing. It’s not included in the Request for Warrant, although the information provided by both officers is that allegedly it’s known on the 21st, and that in fact, looking at Investigator [Audrey] Thomas’ request, that it was not a statement made. There were no admissions and no statements made by Mr. Nyx.
Defense counsel was thus challenging whether the statement was made. He manifestly was not arguing that the statement was correct and that defendant thus engaged in only sexual contact and not penetration.

 See ante at 122, noting that the list of formally degreed offenses includes, at least, murder, CSC, home invasion, child abuse, vulnerable adult abuse, retail fraud, fleeing and eluding, and money laundering.