*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ROBERT ARTHUR JOHNSON, JR.,

        Defendant-Appellant.

FOR PUBLICATION
February 17, 2022
9:10 a.m.

No. 353825
Ontonagon Circuit Court
LC No. 2019-000043-FH

Before: MARKEY, P.J., and SHAPIRO and RONAYNE KRAUSE, JJ.

MARKEY, P.J.

A jury convicted defendant of witness retaliation, MCL 750.122(8). He was sentenced as a fourth-offense habitual offender, MCL 769.12, to 6 to 30 years' imprisonment. Defendant appeals by right. We reverse and remand for a new trial.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In March 2018, defendant was convicted by a jury of resisting or obstructing a police officer, MCL 750.81d(1), and allowing a dog to stray off-leash, MCL 287.262. See *People v Johnson*, unpublished per curiam opinion of the Court of Appeals, issued January 28, 2020 (Docket No. 343882), p 1. This Court affirmed the convictions, which arose out of an incident involving defendant's dog and an altercation between defendant and a police officer who had responded to reports of a dog at large. *Id.* At that earlier trial, several witnesses testified about the events that resulted in defendant's convictions. *Id.* at 2. One of those witnesses was then-14-year-old BP. BP testified that he encountered a three-legged white pit bull—the dog at issue—as BP walked to a clinic for a physical therapy appointment. BP further testified that the dog was barking, that the dog chased him, that BP was afraid that the dog was going to bite him, and that someone then called the dog back and BP was able to safely enter the clinic. The jury viewed a video of BP's encounter with the dog. Defendant attempted to impeach BP's trial testimony with the video footage and a written statement that BP had provided to the police. Defendant's effort at impeachment primarily concerned whether BP was running or walking during portions of the episode. We note that any purported discrepancies in BP's account of events had no real bearing on whether defendant's dog was straying off-leash or on whether defendant resisted or obstructed

-1-

the responding police officer.  In May 2018, defendant was sentenced to 12 months in jail for the resisting-or-obstructing conviction and three months in jail for the stray-dog conviction.  *Johnson*, unpub op at 1.

With respect to the instant charge and conviction, on May 29, 2019, at 10:03 a.m., defendant, no longer incarcerated, sent a message to BP through Facebook Messenger.  The message, which defendant admitted sending to BP, stated:[1]

> Hey there you lying pc of sht, I hope yr proud of yourself. Your fkn lies cost me a year in jail, as the video clearly shows u weren't walking to clinic, werent charged by a dog, nor ran as fast as u could into clinic, cuz u were afraid the dog would bite u. U must have been coached by the cops, and were coherced into lying for then. U dont know the difference bwtween right and wrong, and based on ur writing skills, you MUST be fkn retarded. Goes around comes around, and Karma WILL fuck you, for the lies u told, and the harm you caused me from ur choice to lie. You should be ashamed of yourself, and I hope u suffer an extremely horrible death that causes u and ur family dire pain, like YOU put upon me, and consequences for being a lying little twerp who deserves to have his fkn tongue cut off, cuz if thats the BEST you can do with it, YOU DON'T NEED IT. Fk u and ur family, eat shit and die u lying pc of shit, middle finger high in the air to you, and when ur 18, Id love to show u how much I and my family appreciates your fkn lies. Fuck you.

On the basis of this message, the prosecutor charged defendant with witness retaliation under MCL 750.122(8), which provides:

> A person who retaliates, attempts to retaliate, or threatens to retaliate against another person for having been a witness in an official proceeding is guilty of a felony punishable by imprisonment for not more than 10 years or a fine of not more than $20,000.00, or both. As used in this subsection, "retaliate" means to do any of the following:
>
>> (a) Commit or attempt to commit a crime against any person.
>
>> (b) Threaten to kill or injure any person or threaten to cause property damage.

The prosecution's theory at trial focused on the language in subsection (8)(b) of the statute, with the prosecutor arguing that defendant retaliated against BP for his earlier testimony by threatening to kill or injure BP as communicated through Facebook Messenger.

At the preliminary examination, defendant contended that the message he sent to BP did not contain or constitute a threat to kill or injure BP.  The district court disagreed and bound defendant over for trial.  In the trial court, defendant moved "to dismiss the retaliation charge

---

[1] The message is quoted exactly as sent by defendant.

and/or for appropriate jury instructions." Defendant maintained that the evidence was insufficient to establish a violation of MCL 750.122(8). He also presented First Amendment challenges to the statute and its application. Defendant further asserted that the offense is a specific-intent crime. Defendant requested dismissal of the charge, or, in the alternative, the reading of jury instructions that would protect his First Amendment rights and require the prosecution to establish specific intent. The trial court denied defendant's request to dismiss the charge, concluding that MCL 750.122(8) did not infringe on any First Amendment protections and that there was sufficient evidence to go to trial on the charge of witness retaliation. The trial court also ruled that it would give the jurors the standard jury instruction on witness retaliation, M Crim JI 37.6, although, at the time, the court couched its ruling solely in regard to preliminary jury instructions.

At trial, following the presentation of proofs and closing arguments, the trial court instructed the jury as follows regarding the offense of witness retaliation:

> The defendant is charged with the crime of witness retaliation. To prove this charge the prosecutor must prove each of the following elements beyond a reasonable doubt. First, that [BP] was a witness at an official proceeding. . . . Second, that the defendant retaliated, attempted to retaliate, or threatened to retaliate against [BP] for having been a witness. Retaliate means to commit or attempt to commit a crime against the witness or to threaten to kill or injure any person, or to threaten to cause property damage to the witness. The defendant's intent may be proved by what he said, what he did, how he did it, or by any other facts and circumstances in evidence.

These instructions, except for the final sentence, paralleled M Crim JI 37.6 verbatim. The last sentence is not found in M Crim JI 37.6; rather, it is a stand-alone instruction contained in M Crim JI 4.16, which addresses the various ways that "specific" intent can be proven. See *People v Maynor*, 470 Mich 289, 296; 683 NW2d 565 (2004) (the *Maynor* opinion is the only referenced citation in support of M Crim JI 4.16 following the Use Notes and History). We note that the trial court, consistent with its pretrial ruling, instructed the jury pursuant to M Crim JI 37.6 when the preliminary instructions were read. But, unlike the final jury instructions, the court said nothing about "[t]he defendant's intent," and M Crim JI 4.16 was not given.

About a half-hour after the jury began to deliberate, it sent a question to the trial court asking, "Does psychological injury count as injury under the law? Threaten to kill or injure." The jury returned to the courtroom, and, after the question was read on the record, the trial court responded, "The answer is, yes. Injury means bodily injury, disfigurement, chronic pain, or mental anguish." There is no indication in the record that the trial court discussed the responsive instruction with counsel beforehand, nor did the court ask counsel if they had any objections to the instruction. The jury then returned to its deliberations. Subsequently, the trial court noted on the record that it had received word that the jury had reached an impasse and that the court intended to give the jury an instruction and order continuing deliberations. The trial court gave the jury the deadlocked jury instruction, M Crim JI 3.12. The jury resumed deliberations and eventually reached a verdict, finding defendant guilty of witness retaliation under MCL 750.122(8). Defendant moved for judgment notwithstanding the verdict (JNOV), arguing that the message to BP did not amount to witness retaliation, that the trial court erred by not giving an instruction on

specific intent, and that the conviction was rendered in violation of the First Amendment. The trial court denied the motion for JNOV, and defendant appeals by right.

## II. ANALYSIS

### A. DEFENDANT'S ARGUMENTS ON APPEAL

On appeal, defendant first argues that MCL 750.122(8) violates the First Amendment under the overbreadth doctrine by improperly encompassing both protected and unprotected speech. Defendant further contends that the First Amendment was violated because although "true threats" are not a form of protected speech, specific intent has to be established to demonstrate a true threat, and the jury in the instant case was not instructed that the prosecution was required to prove specific intent. On a similar note, defendant maintains that there was instructional error because the trial court failed to read a mens rea element into MCL 750.122(8), i.e., that the prosecution had to establish that defendant specifically intended to threaten BP with injury or death. Next, defendant claims that the trial court effectively coerced a verdict in reading the deadlocked jury instruction, thereby requiring reversal. In a Standard 4 brief and a supplemental Standard 4 brief, defendant raises numerous arguments, only two of which we need reach. First, defendant argues that the evidence was insufficient to support the conviction for witness retaliation. Second, defendant contends that the trial court erred by instructing the jury that a threat to injure for purposes of MCL 750.122(8)(b) includes a threat to inflict mental harm.

### B. THE FIRST AMENDMENT, CRIMINAL INTENT, AND THE JURY INSTRUCTIONS

We review de novo issues of constitutional law. *People v Boomer*, 250 Mich App 534, 538; 655 NW2d 255 (2002). Whether criminal intent is an element of an offense enacted into law by our Legislature is an issue of statutory construction and is therefore subject to de novo review on appeal. See *People v Tombs*, 472 Mich 446, 451; 697 NW2d 494 (2005). "[J]ury instructions that involve questions of law are also reviewed de novo." *People v Schaefer*, 473 Mich 418, 427; 703 NW2d 774 (2005).

The First Amendment of the United States Constitution provides that "Congress shall make no law . . . abridging the freedom of speech." The First Amendment applies to the States through the Fourteenth Amendment. *Virginia v Black*, 538 US 343, 358; 123 S Ct 1536; 155 L Ed 2d 535 (2003). Protected speech under the First Amendment includes expressions or "ideas that the overwhelming majority of people might find distasteful or discomforting." *Id.* A bedrock principle underlying the First Amendment is that the government cannot prohibit speech simply because the populace finds the speech disagreeable or offensive. *Id.* The First Amendment, therefore, ordinarily deprives a State of the authority to prevent the dissemination of social, economic, and political doctrine that a vast majority of its citizens believe to be fraught with evil consequence. *Id.*

But the *Black* Court further explained:

> The protections afforded by the First Amendment, however, are not absolute, and we have long recognized that the government may regulate certain categories of expression consistent with the Constitution. . . . The First Amendment

-4-

permits restrictions upon the content of speech in a few limited areas, which are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality.

Thus, for example, a State may punish those words which by their very utterance inflict injury or tend to incite an immediate breach of the peace. . . . We have consequently held that fighting words—those personally abusive epithets which, when addressed to the ordinary citizen, are, as a matter of common knowledge, inherently likely to provoke violent reaction—are generally proscribable under the First Amendment. Furthermore, the constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action. And the First Amendment also permits a State to ban a "true threat."

"True threats" encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals. . . . The speaker need not actually intend to carry out the threat. Rather, a prohibition on true threats protects individuals from the fear of violence and from the disruption that fear engenders, in addition to protecting people from the possibility that the threatened violence will occur. Intimidation[2] in the constitutionally proscribable sense of the word is a type of true threat, where a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death. [*Id.* at 358-360 (quotation marks, citations, and brackets omitted).]

Relying primarily on *Black*, this Court has acknowledged that there is no constitutional protection under the First Amendment for "true threats," which encompass "those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *People v Byczek*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 350341); slip op at 6 (quotation marks and citations omitted); see also *People v Gerhard*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 354369); slip op at 3; *TM v MZ*, 326 Mich App 227, 239; 926 NW2d 900 (2018). Accordingly, a penal statute that proscribes a person from making a "threat" must be interpreted as prohibiting "true threats" in order to pass constitutional muster under the Free Speech Clause of the First Amendment.

In this case, the prosecutor argued that defendant, in violation of MCL 750.122(8), retaliated against BP for his prior testimony by threatening to kill or injure him. Consistent with the prosecutor's theory, MCL 750.122(8)(b) provides that retaliation includes a "threat[] to kill or injure any person . . . ." Guided by the principle that "courts should construe statutes in such a manner as to render them constitutional," *People v Hayes*, 421 Mich 271, 284; 364 NW2d 635

---

[2] We note that, strictly speaking, this matter involves retaliation rather than intimidation.

(1984), we interpret MCL 750.122(8)(b) when defining the term "retaliate" as encompassing only "true" threats to kill or injure. And " '[t]rue threats' encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals[,] . . . . [although] [t]he speaker need not actually intend to carry out the threat." *Black*, 538 US at 359-360. Taking this definition of "true threats" enunciated by the United States Supreme Court and reading it in the context of MCL 750.122(8), we conclude that the term "retaliate" means, in part,[3] to make a verbal or written statement in which the speaker or author meant to communicate a serious expression of an intent to kill or injure another person for having been a witness in an official proceeding.[4] Albeit a bit nuanced, the relevant intent relates to intending to threaten a witness with death or injury or intending to communicate such a threat. The prosecution need not prove, however, that a defendant actually intended to carry out the threat.

Our ruling effectively reads a "criminal intent" element into the offense of witness retaliation as charged and pursued by the prosecution in this case. By doing so, we no longer need to address defendant's contention that MCL 750.122(8) is overbroad in violation of the First Amendment and should thus be struck down: Defendant's overbreadth argument is premised on the absence of a "criminal intent" element.[5] We also note that our ruling is consistent with our Supreme Court's observations in *Tombs*, 472 Mich at 451, wherein the Court stated:

> [T]o determine whether a statute imposes strict liability or requires proof of a guilty mind, the Court first searches for an explicit expression of intent in the statute itself.

> Normally, criminal intent is an element of a crime. Statutes that create strict liability for all their elements are not favored. Hence, we tend to find that the Legislature wanted criminal intent to be an element of a criminal offense, even if it was left unstated. [Citations omitted.]

In the instant case, the trial court instructed the jury, consistent with M Crim JI 37.6, that to "[r]etaliate means to . . . . threaten to kill or injure any person . . . ." There was no elaboration on this instruction. The trial court then instructed the jury that "defendant's intent may be proved by what he said, what he did, how he did it, or by any other facts and circumstances in evidence."

---

[3] Our ruling does not affect or concern the definition of "retaliate" found in MCL 750.122(8)(a) ("Commit or attempt to commit a crime against any person.").

[4] We note that this proposition applies equally to circumstances involving a "threat[] to cause property damage." MCL 750.122(8)(b).

[5] "A statute is overbroad when it precludes or prohibits constitutionally protected conduct in addition to conduct or behavior that it may legitimately regulate." *People v Gaines*, 306 Mich App 289, 320; 856 NW2d 222 (2014). We recognize that our holding could be viewed as finding MCL 750.122(8) overbroad as written, which constitutional defect is corrected by reading a criminal-intent element into the statute.

This instruction, which was consistent with M Crim JI 4.16, explained to the jury how specific intent can be proven, yet the court did not even instruct the jury that the prosecution had to prove specific or criminal intent to establish the crime of witness retaliation.

We hold that the jury was not properly instructed and that M Crim JI 37.6 lacks language necessary to avoid infringement of the First Amendment right to free speech.[6] To satisfy the "true threat" exception to the Free Speech Clause, the jury needed to be instructed that the prosecution was required to prove beyond a reasonable doubt that defendant meant to express a serious intent to kill or injure BP, although the prosecutor did not have to prove that defendant actually intended to kill or injure BP. We need not explore whether this instructional error of constitutional magnitude was harmless, forfeited, or waived, considering that an additional instructional error discussed infra requires reversal.[7] On remand for new trial, the court shall instruct the jury on witness retaliation consistent with this opinion.

## C. SUFFICIENCY OF THE EVIDENCE

Defendant argues that there was insufficient evidence to prove beyond a reasonable doubt that the message sent to BP actually contained a threat to "kill" or "injure" BP. We examine this issue without contemplation of criminal intent and our determination of instructional error. It is necessary to address this issue because if the evidence was insufficient to show that the message spoke to defendant's killing or injuring BP, defendant would be entitled to an order of acquittal.

In *People v Kenny*, 332 Mich App 394, 402-403; 956 NW2d 562 (2020), this Court set forth the well-established principles governing a sufficiency argument, observing as follows:

> This Court reviews de novo whether there was sufficient evidence to support a conviction. In reviewing the sufficiency of the evidence, this Court must view the evidence—whether direct or circumstantial—in a light most favorable to the prosecutor and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. A jury, and not an appellate court, observes the witnesses and listens to their testimony; therefore, an appellate court must not interfere with the jury's role in assessing the weight of the evidence and the credibility of the witnesses. Circumstantial evidence and any reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of a crime. The prosecution need not negate every reasonable theory of innocence; it need only prove the elements of the crime in the face of whatever contradictory evidence is provided by the defendant. All conflicts

---

[6] We note that on appeal the prosecution attempts to play both sides of the fence, arguing that defendant's overbreadth argument fails because specific or criminal intent is inferred for purposes of MCL 750.122(8), while later contending that defendant's argument of instructional error fails because MCL 750.122(8) only requires proof of general intent.

[7] We do highly question the prosecution's argument that defendant waived any instructional error by indicating that there was no objection to the court's instructions. The argument fails to recognize that defendant moved before trial for an instruction on specific or criminal intent.

in the evidence must be resolved in favor of the prosecution. [Quotation marks and citations omitted.]

In this case, the message defendant sent to BP through Facebook Messenger included the following penultimate sentence: "when ur 18, Id love to show u how much I and my family appreciates your fkn lies." When this particular language is viewed in conjunction with earlier references in the message, including defendant's hope that BP suffers "an extremely horrible death" and that BP "deserves to have his fkn tongue cut off," a juror could reasonably infer that defendant was threatening to "kill" or "injure" BP for having testified against defendant in the earlier prosecution. Upon viewing the evidence in a light most favorable to the prosecution, resolving all conflicts in the evidence in favor of the prosecution and appreciating that it was for the jury to assess the weight of the evidence, we hold that the evidence and reasonable inferences arising from the evidence were sufficient to establish beyond a reasonable doubt that the message sent to BP contained a threat to "kill" or "injure" BP.

### D. MENTAL ANGUISH OR PSYCHOLOGICAL INJURY

As indicated earlier in this opinion, after the jury began to deliberate, it sent a question to the trial court asking, "Does psychological injury count as injury under the law? Threaten to kill or injure." The trial court responded, "The answer is, yes. Injury means bodily injury, disfigurement, chronic pain, or mental anguish." Defendant argues on appeal that the trial court erred by essentially instructing the jury that retaliation includes threats to psychologically injure a witness.

We are somewhat confused by the jury's question, as it suggests that the jurors were perhaps making inquiry in regard to the type of harm or injury BP suffered and not the nature of the threat defendant made against BP. Whether BP suffered mental anguish or psychological injury as a result of defendant's message was irrelevant to the prosecution's burden to prove the elements of the crime of witness retaliation. There existed a real danger that the jury convicted defendant on the basis that BP suffered mental anguish.

To the extent that the jury construed the trial court's response-instruction to mean that retaliation included threats to psychologically or mentally injure BP, it is still problematic and requires reversal. Again, MCL 750.122(8)(b) defines the term "retaliate" as meaning, in part, to "[t]hreaten to kill or injure any person . . . ." When construing a statute, we must ascertain and give effect to the Legislature's intent, and the words used in the statute reflect the most reliable indicator of legislative intent and should be interpreted on the basis of their ordinary meaning and the context within which the words are used in the statute. *People v Zajaczkowski*, 493 Mich 6, 13; 825 NW2d 554 (2012). When statutory language is unambiguous, the statute must be enforced as written, with no further judicial construction being permitted. *People v Pinkney*, 501 Mich 259, 268; 912 NW2d 535 (2018). When viewed in context, we conclude that the plain and unambiguous language of MCL 750.122(8)(b) demonstrates that the Legislature was addressing threats to kill or *physically* injure a witness. Employing the term "injure" directly after referencing the term "kill" reveals that the Legislature was focused on threats of a physical nature. Moreover, if the Legislature intended for the statute to encompass a threat to psychologically injure a witness, which seems a strained interpretation, it needed to expressly so provide to avoid the application of the rule of lenity. "The rule of lenity stands for the proposition that penal laws are to be strictly

construed, with all doubts resolved in a defendant's favor[,]" and "[t]he rule applies only when the statutory text is ambiguous[.]" *People v Arnold*, __ Mich __, __; __ NW2d __ (2021) (Docket No. 160046); slip op at 19 n 51. Absent a specific reference to threats to mentally injure a witness, the statute is, at most, ambiguous on the issue. And the rule of lenity precludes extending the reach of the statute to threats of psychological injury. Reversal is warranted.

## E. MISCELLANEOUS MATTERS

Defendant raises additional issues on appeal concerning the deadlocked-jury instruction, the scoring of the sentencing variables, the jury-selection process, and other matters that are rendered moot in light of our ruling reversing defendant's conviction and remanding the case for new trial. We deem abandoned remaining issues defendant raised in his Standard 4 briefs because they are either indecipherable, entirely unsupported by citation to the record or law, or otherwise inadequately briefed for consideration. See *Mudge v Macomb Co*, 458 Mich 87, 105; 580 NW2d 845 (1998).

We reverse and remand for new trial. We do not retain jurisdiction.

/s/ Jane E. Markey
/s/ Douglas B. Shapiro