*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DENNIS JAMES ELKINS,

        Defendant-Appellant.

UNPUBLISHED
December 15, 2025
11:34 AM

No. 371683
Ingham Circuit Court
LC No. 22-000940-FC

Before: SWARTZLE, P.J., and O'BRIEN and BAZZI, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial conviction of first-degree criminal sexual conduct, MCL 750.520b(1)(a) (sexual penetration of victim under 13 years of age), for which the trial court sentenced him to serve 25 to 50 years' imprisonment. We affirm.

## I. FACTS

This case arises out of defendant's sexual assault of the victim, who was 11 years old at the time. The victim was close friends with defendant's granddaughter, ME. In August 2022, the victim and ME had a sleepover at defendant's home. The victim testified that after she fell asleep, she woke up to "[p]ressure and a stinging sensation" in her vagina. The victim testified that while defendant touched the outside of her vagina, he mostly touched the inside of it with a "pushing" motion. She also stated that she texted her mother for help while defendant's fingers were still in her vagina. According to the victim, she used the light from her cell phone to see defendant staring back at her, and defendant stopped touching her shortly afterward.

The victim disclosed the incident to her mother and stepfather, who contacted the police. Sharon Goodfellow, a registered nurse, collected the victim's underwear and took sample swabs of the victim's vulva and perianal area for DNA testing. After her examination, the victim discussed the details of her assault during a forensic interview and identified defendant as her assailant.

The Michigan State Police Laboratory tested the collected swabs and underwear and detected the possible presence of male DNA, but only the victim's perianal and underwear swabs

had sufficient DNA for additional testing. Samantha Hopcraft, a forensic scientist with the biology and DNA unit, explained that when samples potentially contain semen, they will attempt to separate the sperm cells from the nonsperm cells. The result is that "fraction 1" will contain the nonsperm cells, and "fraction 2" will contain the sperm cells. Hopcraft conducted autosomal DNA testing on the fraction 2 sample from the underwear swabs,[1] the results of which indicated very strong support for the contention that defendant was not a contributor to the male DNA. However, Hopcraft did not perform such testing with the fraction 1 sample. Cassandra DeRuiter, a lab manager with the DNA unit, conducted Y-STR DNA tests on the fraction 1 samples from the underwear swabs and the perianal swabs.[2] The Y-STR haplotype identified in the testing matched defendant's haplotype, and DeRuiter testified that she would probably have to look at 3,062 males before she saw that haplotype again in the population at large.

Defendant was convicted after a four-day jury trial. Defendant then filed motions for a directed verdict of acquittal and for a motion for a new trial, arguing that there was insufficient evidence for his conviction to stand. The trial court denied both motions and proceeded to sentencing. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

"A challenge to the sufficiency of evidence underpinning a conviction implicates due process." *People v Parkinson*, 348 Mich App 565, 575; 19 NW3d 174 (2023). "Due process requires that a prosecutor introduce evidence sufficient to justify a trier of fact to conclude that the defendant is guilty beyond a reasonable doubt." *People v Tombs*, 260 Mich App 201, 206-207; 679 NW2d 77 (2003), aff'd 472 Mich 446 (2005).

We "review de novo a challenge to the sufficiency of the evidence." *People v Baskerville*, 333 Mich App 276, 282; 963 NW2d 620 (2020). We review the evidence "in a light most favorable to the prosecut[ion] to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt." *Id*. (quotation marks and citation omitted). "The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). Further, "[a]ll conflicts in the evidence must be resolved in favor of the prosecution[,] and we will not interfere with the jury's determinations regarding the weight of the evidence and the credibility of the

---

[1] Autosomal testing was described as follows:

> [I]n the autosomal testing . . . , you get a random combination of all the chromosomes from either of your parents, so that will give you a uniqueness because that assortment is random compared to . . . any other siblings you might have from those parents, so you would have a unique DNA assortment of chromosomes than from your siblings.

[2] Y-STR testing is designed to isolate and identify the male portion of the DNA in a sample.

witnesses." *People v Unger*, 278 Mich App 210, 222; 749 NW2d 272 (2008). The prosecution "is not obligated to disprove every reasonable theory consistent with innocence to discharge its responsibility; it need only convince the jury 'in the face of whatever contradictory evidence the defendant may provide.' " *Nowack*, 462 Mich at 400, quoting *People v Konrad*, 449 Mich 263, 273 n 6; 536 NW2d 517 (1995).

In this case, to convict defendant of first-degree criminal sexual assault, the prosecution was required to establish beyond a reasonable doubt that defendant engaged in sexual penetration of a person under 13 years of age. MCL 750.520b(1)(a). "Sexual penetration means sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required." MCL 750.520a(r). Defendant does not challenge any specific elements of first-degree criminal sexual conduct, except to assert that there was insufficient evidence to show that he was the perpetrator. "[I]t is well settled that identity is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008).

At trial, the victim testified unequivocally that she woke up to find defendant touching the inside and outside of her vagina with his fingers, and that she saw defendant's face with the light from her phone. The victim did not recall ever telling the police that she could not see the face of the person touching her,[3] and her identification of defendant was consistent with the testimony from the witnesses that she interacted with after the assault. The victim's mother testified that the victim identified defendant as the assailant immediately after the assault, and Goodfellow testified that the victim identified defendant as her assailant during her examination. The victim also identified defendant as the person who assaulted her during a forensic interview.

Defendant asserts on appeal that the victim's identification was "motivated by the revenge she sought against the person she incorrectly believed to be the perpetrator of the assault," but no evidence suggests that the victim's identification was inaccurate, untruthful, or fabricated on account of "revenge." The victim's clear and consistent testimony was sufficient to support defendant's conviction, even if it lacked any corroboration. See MCL 750.520h; *People v Solloway*, 316 Mich App 174, 181; 891 NW2d 255 (2016). Moreover, determining the credibility of the victim was a question for the jury to resolve, and this Court will not interfere with that role. *Solloway*, 316 Mich App at 181-182.

Although not needed to resolve the issue before us, we address defendant's assertion that the DNA evidence was largely exculpatory. While the autosomal DNA testing of the fraction 2 sample from the victim's underwear showed that that it was 7.6 billion times more likely that the DNA came from the victim and an unrelated, unknown contributor than from the victim and defendant, defendant ignores the DNA testing performed on other samples. Y-STR testing was conducted on a *different* sample—fraction 1—and did provide a possible connection to defendant. DeRuiter testified that the Y-STR testing on the victim's underwear swabs-fraction 1 shows that

---

[3] Defendant asserts that the victim did in fact tell authorities that she could not see the face of the perpetrator, but he has identified no evidence to support that claim. Although defense counsel suggested this was the case during cross-examination, the questions of attorneys are not evidence, M Crim JI 2.10, and defendant has not identified any evidence.

the major Y-STR haplotype obtained matched the Y-STR haplotype from defendant's DNA sample. DeRuiter similarly testified that the partial Y-STR haplotype from the victim's perianal swabs-fraction 1 matched the Y-STR haplotype from defendant's DNA sample. DeRuiter emphasized that she used different samples in her testing from those Hopcraft used. From the results of the Y-STR testing of the victim's anal perianal swabs-fraction 1, as noted, DeRuiter estimated that she would have to examine on average 3,062 men to find one who matched the haplotype other than defendant or his close male relatives. Accordingly, contrary to defendant's argument, the DNA evidence presented at trial was not exonerating, and it does not diminish the sufficiency of the evidence establishing defendant's identification.

## III. MOTION FOR NEW TRIAL

A trial court's decision whether to grant a motion for a new trial is reviewed for an abuse of discretion. *People v Johnson*, 502 Mich 541, 564; 918 NW2d 676 (2018). "An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes." *People v Buie*, 491 Mich 294, 320; 817 NW2d 33 (2012). "A mere difference in judicial opinion does not establish an abuse of discretion." *Johnson*, 502 Mich at 564.

A court may grant a new trial "on any ground that would support appellate reversal of the conviction or because it believes that the verdict has resulted in a miscarriage of justice." MCR 6.431(B). However, a new trial may not be granted

> on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice. [MCL 769.26.]

"Generally, a verdict may be vacated only when the evidence does not reasonably support it and it was more likely the result of causes outside the record, such as passion, prejudice, sympathy, or some other extraneous influence." *People v Lacalamita*, 286 Mich App 467, 469; 780 NW2d 311 (2009). But "[c]onflicting testimony, even when impeached to some extent, is an insufficient ground for granting a new trial." *People v Lemmon*, 456 Mich 625, 647; 576 NW2d 129 (1998).

"[D]ue process requires the prosecution to disclose evidence in its possession that is exculpatory and material, regardless of whether the defendant requests the evidence." *People v Jackson*, 292 Mich App 583, 590-591; 808 NW2d 541 (2011). However, "[f]or due process purposes, there is a crucial distinction between failing to disclose evidence that has been developed and failing to develop evidence in the first instance." *People v Anstey*, 476 Mich 436, 461; 719 NW2d 579 (2006). Further, "the police have no constitutional duty to assist a defendant in developing potentially exculpatory evidence," *id*., and the prosecution does not have a duty to search for evidence or investigate to aid the defendant's case, *People v Burwick*, 450 Mich 281, 289 n 10; 537 NW2d 813 (1995).

In his motion for a new trial, defendant asserted that buccal swabs from his grandson, CE, would have both excluded defendant as the victim's assailant and positively identified CE as the

only contributor of DNA on the victim's underwear swab. The trial court properly characterized defendant's assertions as "wholly, completely, totally speculation."

Defendant on appeal does not argue that the jury was misdirected, that evidence was improperly admitted, or that any error of pleading or procedure occurred that would justify a new trial. See MCL 769.26. Further, defendant cannot establish that the jury's verdict was more likely the result of passion, prejudice, sympathy, or some extraneous influence than the evidence provided at trial. See *Lacalamita*, 286 Mich App at 469. Instead, defendant repeatedly argues that the prosecution failed to undertake efforts that might have produced exculpatory evidence. However, defendant's argument fails for the simple reason that the prosecution did not have any duty or obligation to search for exculpatory evidence in his case. See *Burwick*, 450 Mich at 289 n 10. Further, the record does not support defendant's argument.

The detective investigating the assault testified that he observed the victim's forensic interview, and, on the basis of it, obtained a search warrant to collect defendant's DNA. When the detective asked defendant and his wife for information about the case, they declined to cooperate. The detective testified that he later learned of the allegation that CE might have been involved in the assault, but he was not able to substantiate any such claim. The investigation therefore indicated that only defendant, his wife, ME, and the victim were present in defendant's home when the assault occurred, leaving the detective without a reasonable basis for requesting a DNA sample from CE. Further, we note that, although defendant relies on his wife's testimony that CE was present at the time of the assault, she admitted at trial that she never spoke with law enforcement about CE's alleged presence in the home during the investigation. And, as noted, several witnesses contradicted defendant's wife regarding CE's presence at the home. There was therefore nothing in the record to indicate that a DNA sample from CE would have conclusively identified CE, to the exclusion of defendant, as the assailant. And neither law enforcement nor the prosecution was required to obtain a DNA sample from CE. See *Anstey*, 476 Mich at 461; *Burwick*, 450 Mich at 289 n 10.

For these reasons, we conclude that the trial court's decision to deny defendant's motion for a new trial did not fall outside the range of principled outcomes. See *Buie*, 491 Mich at 320.

Affirmed.

/s/ Brock A. Swartzle
/s/ Colleen A. O'Brien
/s/ Mariam S. Bazzi